**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GEORGIA STATE CONFERENCE
OF THE NAACP; GEORGIA
COALITION FOR THE PEOPLE'S
AGENDA, INC.; and NEW
GEORGIA PROJECT, INC.,

CIVIL ACTION NO. _____

     Plaintiffs,

v.

BRIAN KEMP, Governor of the State
of Georgia, in his official capacity, and
BRAD RAFFENSPERGER, Secretary
of State of Georgia, in his official
capacity,

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

     Defendants.

## INTRODUCTION

1.     Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, and New Georgia Project bring this emergency action to prevent widespread disenfranchisement of would-be eligible voters who were hindered from registering to vote by Georgia's October 7 deadline due to a catastrophic weather event beyond their control.

2.     Hurricane Helene hit Georgia on September 27, 2024. It is the second-deadliest hurricane to hit the contiguous United States,[1] bringing a historic eleven inches of rainfall in Georgia and resulting in loss of life and massive flooding that washed away roads, buildings, homes, and vehicles.

3.     Hurricane Helene led to massive disruptions of government operations, including widespread closures of many government offices like postal service offices and county boards of elections.

4.     Communities throughout Georgia lost power, internet, cellular service, and access to other essential services. Efforts remain ongoing to fully restore these services. As of the October 7 voter registration deadline, thousands of Georgians remain without power, and Georgia remains in a state of emergency.

---

[1] Leah Sarnoff & Daniel Amarante, *Tracking Hurricane Helene's Destruction: Path, Storm Surge and Rescue Efforts*, ABC News (Oct. 5, 2024), https://abcnews.go.com/US/tracking-hurricane-helenes-destruction-path-storm-surge-rescue/story?id=114471845.

5.      These massive and widespread disruptions and devastation likely prevented tens of thousands of Georgia residents from timely registering to vote because they lacked internet access, could not travel, lacked access to postal services, or had no operational county election office.

6.      Hurricane Helene significantly impaired registration throughout the entire week leading up to the deadline, which is historically a popular time to register. Data from Georgia's voter files shows that Georgia historically sees a spike in registrations in the last week of registration compared to the prior week. In the last presidential election year, for example, over 57,000 people registered to vote during the week before the deadline, compared with approximately 36,500 the week prior. The same pattern holds in 2022, 2018, and 2016. This data suggests that the week in which Hurricane Helene most impacted the state is the same week in which tens of thousands of eligible Georgians would have registered to vote.

7.      Despite the tremendous destruction and resulting barriers to voter registration caused by Helene, Defendants in this action have failed to extend the voter registration deadline, risking disenfranchising eligible voters across Georgia who would have registered absent the impacts of the storm.

8.      This Court should not allow a natural disaster to shut out would-be voters throughout the state from participating in our democracy. The right to vote is "a fundamental matter in a free and democratic society." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). "No right is more precious in a free

country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). That is because voting is "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The State can and should protect that right by extending the voter registration deadline to October 14, 2024 to make up for the time lost from the storm.

9.     Without relief, many eligible prospective voters who have faced widespread power outages, internet and cellular, loss of transportation, restrictions on government services, closures of government buildings, and/or other dangerous conditions resulting from Hurricane Helene will be disenfranchised.

## PARTIES

10.     Plaintiff GEORGIA STATE CONFERENCE OF THE NAACP ("Georgia NAACP") is a non-partisan, interracial, nonprofit membership organization that was founded in 1941. Its mission is to eliminate racial discrimination through democratic processes and ensure the equal political, educational, social, and economic rights of all persons, in particular African Americans. It is headquartered in Atlanta and currently has approximately 10,000 members across approximately 180 local units in at least 120 counties in Georgia.

11.     The Georgia NAACP has long sought to prevent efforts to suppress or disenfranchise Black voters and other voters of color and continues to work to protect voting rights through litigation, advocacy, legislation, communication, and

outreach, including work to promote voter registration, voter education, get out the vote ("GOTV") efforts, election protection, and census participation. The organization focuses efforts on Black and other underrepresented communities in Georgia.

12.    The Georgia NAACP has conducted voter registration drives and submitted many voter registration applications to elections officials across Georgia, in counties including but not limited to Augusta-Richmond, Bulloch, Coffee, Columbia, Liberty, Lincoln, Lowndes, McDuffie, Montgomery, Washington, and Wheeler. The Georgia NAACP maintains over 180 branch offices in 120 counties, which engage in significant voter registration efforts in presidential election cycles. All of the Georgia NAACP branch offices, however, were closed between September 27, 2024 and October 4, 2024, due to Hurricane Helene and Governor Kemp's state of emergency declaration and could not conduct voter registration activity during that period. At least two branch offices in Augusta-Richmond County and Coffee County are still closed on October 7, 2024.

13.    The Georgia NAACP was forced to cancel voter registration events scheduled to take place in Valdosta, which is in Lowndes County, and Augusta-Richmond County because of Hurricane Helene. The Georgia NAACP also cancelled door-to-door voter registration canvassing scheduled to start on September 27, 2024, when Hurricane Helene made landfall.

14.     If the voter registration deadline is not extended, the Georgia NAACP will be prevented from carrying out its core activity of registering voters to vote during the busiest registration days in four years in Georgia, including in the following counties: Augusta-Richmond, Brooks, Bulloch, Chatham, Coffee, Colquitt, Columbia, Echols, Emanuel, Jeff Davis, Jefferson, Liberty, Lincoln, Lowndes, McDuffie Montgomery, Tattnall, Tift, Toombs, Washington, and Wheeler.

15.     Plaintiff THE GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC. ("GCPA") is a Georgia nonprofit corporation with its principal place of business located in Atlanta, Georgia. GCPA is a coalition of more than 30 organizations, which collectively have more than 5,000 individual members across Georgia, including in many counties in southern and eastern Georgia.

16.     In addition to its main office in Atlanta, GCPA has field offices in Athens, Albany, Augusta, Macon, Savannah, LaGrange, and Rome, enabling it to provide outreach and support to voters and prospective voters of color and underserved communities outside of the Metro Atlanta area. Each office serves roughly 10 to 12 surrounding counties on a regular basis.

17.     GCPA's support of voting rights is central to its mission. The organization has committed, and continues to commit, time and resources to protecting voting rights through advocacy, communication, and outreach, including

work to promote voter registration, voter education, get out the vote efforts, election protection, census participation, and litigation.

18.     GCPA regularly conducts voter registration activities throughout Georgia, including in Augusta-Richmond, Burke, Columbia, McDuffie, Screven, Effingham, Bulloch, Bryan, Liberty, Tattnall, Chatham, McIntosh, Wayne, Pierce, Evans, Camden, Lowndes, Brooks, Decatur, Colquitt, Tift, Lee, Warren, and Washington counties.

19.     GCPA typically carries out the most intense period of its voter registration activities in the week leading up to the voter registration deadline before a general election. The power outages, internet outages, road closures and blockages, flooding, and other damage caused by Hurricane Helene forced GCPA to cancel planned voter registration events scheduled in Lowndes County, Augusta-Richmond County, and Liberty County, including a tabling event at Valdosta State University in Lowndes County.

20.     In addition to formal voter registration events, GCPA conducts more informal voter registration efforts. GCPA coordinators, volunteers, and canvassers conduct voter registration activities in high traffic areas of different neighborhoods across the state. These efforts in Augusta-Richmond, Burke, Columbia, McDuffie, Screven, Effingham, Bulloch, Bryan, Liberty, Tattnall, Chatham, McIntosh, Wayne, Pierce, Evans, Camden, Lowndes, Brooks, Decatur, Colquitt, Tift, Lee, Warren, and Washington were hindered or stopped completely because of the

challenges posed by Hurricane Helene, including power outages, internet outages, closed and blocked roadways, and flooding.

21.    GCPA conducts its voter registration activities with paper voter registration applications and as such relies on county boards of registrars to provide blank paper applications. GCPA also returns transmittal summary sheets and completed voter registration applications to county boards of registrars with the consent of the applicants. In addition to the physical challenges posed by Hurricane Helene, because the boards of registrars in Lowndes County, Augusta-Richmond County, and Bulloch County were closed between September 30 and at least October 6, 2024, GCPA was prevented from collecting and submitting voter registration forms in those counties during this time period.

22.    Plaintiff NEW GEORGIA PROJECT ("NGP") is a nonpartisan, non-profit organization based in Atlanta, Georgia, with regional offices and operations in Athens, Albany, Augusta, Brunswick, Columbus, Clayton County, Fulton County, Gwinnett County, Macon, Savannah, Statesboro, Stone Mountain, and Valdosta. Through dedicated volunteers, activists, and staff, NGP works to increase the civic participation of historically marginalized communities statewide through nonpartisan voter registration, voter education, and get-out-the-vote efforts. Voter registration through door-to-door canvassing and voter registration drives are core activities to NGP's mission as an organization.

23.     NGP completes its door-to-door voter registration canvassing efforts through paper applications. Volunteers complete their canvassing efforts through shifts organized by NGP staff. As such, NGP staffs each regional office with quality control managers and field manager to work closely with county board of registrars to receive blank voter registration applications, answer voter questions, and return transmittal summary sheets and the completed voter registration applications with the consent of applicants. Coordination with county offices is essential for the NGP's voter registration activities.

24.     NGP's volunteers and staff support voters in the voter registration process in the following southern and eastern counties in Georgia: Appling, Augusta-Richmond, Ben Hill, Berrien, Brooks, Burke, Bulloch, Candler, Chatham, Clinch, Colquitt, Columbia, Echols, Jefferson, Laurens, Lowndes, Screven, and Tift.

25.     Because of Hurricane Helene's aftermath, NGP has not been able to complete its planned voter registration activities before the voter registration deadline following the closure of its own offices, particularly the office in Augusta-Richmond County which remains closed on October 7, 2024, and Augusta-Richmond County Board of Elections office since September 27, 2024.

26.     Defendant BRIAN KEMP is the Governor of the State of Georgia and is sued in his official capacity. Defendant Kemp has the chief executive power of the state, Ga. Const. art. 5, § 2. As Governor, Defendant Kemp is granted broad

emergency powers under Georgia state law. Ga. Code Ann. § 38-3-51. Those powers include the ability to extend the voter registration deadline for the entire State of Georgia, or one or more of its counties. Ga. Code Ann. 38-3-51(d)(1).

27.     Defendant BRAD RAFFENSPERGER is the Secretary of State of Georgia and the chief elections official of the State, Ga. Code Ann. § 21-2-210, and is sued in his official capacity. Secretary Raffensperger is responsible for implementing elections statutes and routinely issues guidance to the county election officials of all 159 counties on various elections procedures and requirements. As Secretary of State, his responsibilities include maintaining the state's official list of registered voters and preparing and furnishing information for citizens pertaining to voter registration and voting. Ga. Code Ann. §§ 21-2-50(a), 21-2-211. Secretary Raffensperger is responsible for the coordination of voter registration responsibilities under the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). Ga. Code Ann. §§ 21-2-50(a), 21-2-211.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States of America.

29.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state law, of

rights, privileges, and immunities secured by the First and Fourteenth Amendments to the U.S. Constitution and by the National Voter Registration Act of 1993.

30.    This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

31.    This Court has personal jurisdiction over the Defendants, who are sued in their official capacities only.

32.    Venue is proper in the U.S. District Court for the Northern District of Georgia pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), and under Local Civ. R. 3.1, because Defendants reside in this district and this division and a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

## STATEMENT OF FACTS AND LAW

33.    The National Voter Registration Act of 1993 ("NVRA") requires states to ensure "that any eligible applicant is registered to vote" if they submit their registration form by the deadline imposed by state law, provided that the state must allow voters to register up to 30 days prior to an election. 52 U.S.C. § 20507(a)(1).

34.    Georgia law requires that the main elections office in each county "remain open for business during regular office hours on each business day, except Saturday" and "be open at such designated times other than the normal business

hours as shall reasonably be necessary to facilitate registration and at such other hours as will suit the convenience of the public." Ga. Code Ann. § 21-2-215(c).

35.　Georgia state law provides that "[a]ny person desiring to register as an elector shall apply to do so by making application to a registrar or deputy registrar of such person's county of residence in person, by submission of the federal post card application form as authorized under Code Section 21-2-219, by making application through the Department of Driver Services as provided in Code Section 21-2-221, by making application through the Department of Natural Resources as provided in Code Section 21-2-221.1, by making application through designated offices as provided in Code Section 21-2-222, or by making application by mail as provided in Code Section 21-2-223." Ga. Code Ann. § 21-2-220(a). Applicants with access to the internet and a current Georgia driver's license or state identification card may register to vote online. Ga. Code Ann. § 21-2-221.2.

36.　The voter registration deadline is October 7, 2024. *See* Ga. Code Ann. § 21-2-224(a). Georgia does not permit eligible citizens to register during the in-person advance voting period or on Election Day.

37.　Recognizing the potential impact of Hurricane Helene, the Governor declared a state of emergency for all 159 counties on September 24, 2024.[2]

---

[2] Exec. Order of the State of Ga., State of Emergency for Tropical Storm Helene (Sept. 24, 2024), https://gov.georgia.gov/document/2024-executive-order/09242401/download.

38.     Three days later and just seven business days before the voter registration deadline, Hurricane Helene hit Georgia as a Category 2 hurricane on September 27.[3]

39.     Georgians experienced massive destruction statewide because Hurricane Helene brought high winds and heavy rain, leading to flooding and damage to trees, streetlights, power lines, and buildings.

40.     On September 30, the Georgia Supreme Court issued a Statewide Judicial Emergency Order.[4]

41.     On October 1, the Governor extended the state of emergency, which remains in place as of today.[5]

42.     The Georgia Emergency Management and Homeland Security Agency has declared a Major Disaster in 41 Georgia counties.[6] The Federal Emergency Management Agency ("FEMA") declared 53 counties in Georgia as

---

[3] Andrew Freedman & Rebecca Falconer, *"Catastrophic" Hurricane Helene Lashes Georgia After Florida Landfall*, Axios (Sept. 26, 2024), https://www.axios.com/2024/09/26/hurricane-helene-catastrophic-damage.

[4] Order of the Sup. Ct. of Ga., in re: Statewide Judicial Emergency due to Tropical Cyclone Helene (Sept. 30, 2024), https://www.gasupreme.us/wp-content/uploads/2024/09/Helene-Chief-Justice-Emergency-Order-final_signed.pdf.

[5] Exec. Order of the State of Ga., *supra* note 2.

[6] Press Release, Ga. Emergency Mgmt. & Homeland Sec. Agency, Major Disaster Declared for 41 Georgia Counties, Individual and Public Assistance Available (Oct. 2, 2024), https://gema.georgia.gov/press-releases/2024-10-02/major-disaster-declared-41-georgia-counties-individual-and-public.

disaster areas for purposes of federal relief to families and individuals.[7] FEMA authorized funding for emergency work in Appling, Brooks, Coffee, Columbia, Jefferson, Liberty, Lowndes, Pierce, Richmond, Tattnall, and Toombs Counties, and funding for affected individuals in Appling, Brooks, Coffee, Columbia, Jefferson, Liberty, Lowndes, Pierce, Richmond, Tattnall, and Toombs Counties.[8]

43.     Across the state, approximately 1.3 million households suffered power outages from the storm; 300 Georgia roadways were made impassible due to fallen trees and debris; and approximately 60,000 miles of road were adversely impacted. At least 33 people lost their lives.[9]

44.     Georgia Power Company, the largest electric utility in Georgia, declared that Hurricane Helene was the "the most destructive hurricane" in its history and "had a statewide impact" that necessitated a "statewide response."[10] In

---

[7] *Designated Areas: Disaster 4830*, Fed. Emergency Mgmt. Agency, https://www.fema.gov/disaster/4830/designated-areas (last visited Oct. 7, 2024).
[8] Press Release, Fed. Emergency Mgmt. Agency, President Joseph R. Biden, Jr. Approves Major Disaster Declaration for Georgia (Oct. 1, 2024), https://www.fema.gov/press-release/20241001/president-joseph-r-biden-jr-approves-major-disaster-declaration-georgia.
[9] Rosana Hughes, *Helene in Georgia: Death Toll Rises to 33; Nearly 300K Still Without Power*, Atlanta J. Const. (Oct. 3, 2024), https://www.ajc.com/news/crime/helene-in-georgia-death-toll-rises-to-33-nearly-300k-still-without-power/CK5O5AUOPFBMLASFJD7I4PVTGY/.
[10] *Georgia Power Response Force Converging on Hardest Hit Areas Following Most Destructive Hurricane in Company's History*, Ga. Power (Sept. 30, 2024), https://www.georgiapower.com/company/news-hub/press-releases/georgia-power-response-force-converging-on-hardest-hit-areas-following-most-destructive-hurricane.html.

some areas, the "damage to infrastructure [was] so severe teams [were] essentially rebuilding parts of the grid and not just repairing specific elements."[11]

45.    Hurricane Helene disrupted all options for registering to vote in Georgia, which include online, in person at various government offices, and by mail.

46.    Many Georgians throughout the state experienced and are still experiencing massive power outages and internet and cellular outages, disrupting Georgians' ability to use electronic devices and access the internet.

47.    As of October 3, six days after Helene hit Georgia, approximately 300,000 Georgia residents still lacked power.[12] Even last night, as of 9 p.m. on Sunday, October 6, there were still households without power in at least Appling, Bacon, Berrien, Chatham, Coffee, Columbia, Dekalb, Echols, Emanuel, Fulton, Glascock, Glynn, Jeff Davis, Jefferson, Lincoln, Lowndes, McDuffie, Montgomery, Richmond, Tattnall, Telfair, Terrell, Toombs, Treutlen, Ware, and Warren Counties.[13]

---

[11] *Id.*

[12] Mariya Murrow & Abby Kousouris, *Georgia Death Toll From Hurricane Helene Rises to 33, Gov. Kemp Says*, Atlanta News First (Oct. 3, 2024), https://www.atlantanewsfirst.com/2024/10/03/watch-live-gov-kemp-gives-update-hurricane-helene-relief-efforts/.

[13] *Outage Map*, Ga. Power, https://outagemap.georgiapower.com/ (last visited Oct. 7, 2024).

48.     On September 30, about 49,000 people were without power in Lowndes County.[14] As late as October 6, there were still over 11,000 outages in the county.[15]

49.     Over 95,000 customers in Richmond County experienced power outages on September 27.[16] As of October 3, approximately 33,000 customers were still experiencing power outages,[17] and almost 15,000 customers were still without power as of October 6 at 4 pm.[18] Some power outages in Richmond County will extend until at least October 9.[19]

---

[14] Lars Lonnroth, *UPDATE: Nearly 600K Without Power in Georgia After Helene. How Many Outages Remain in Central Georgia*, 13WMAZ (Sept. 30, 2024), https://www.13wmaz.com/article/news/state/helene-helene-nearly-600k-without-power-outages-central-georgia/93-7c596cea-5668-490a-bc26-20c8dd6852d0.

[15] *Outages*, Colquitt EMC, https://colquitt.datacapable.com/map/ (last visited Oct. 7, 2024).

[16] *OFF THE GRID: Richmond County, Georgia Power Outage Tracker*, USA Today, https://data.usatoday.com/national-power-outage-map-tracker/area/richmond-county-georgia/13245/ (last visited Oct. 7, 2024).

[17] Miguel Legoas, *'Frustrating, to Say the Least': Augustans Get Extensions on Power Outages After Hurricane*, Augusta Chronicle (Oct. 4, 2024), https://www.augustachronicle.com/story/weather/hurricane/2024/10/04/augusta-area-residents-get-longer-power-outages-after-hurricane-helene/75503089007/.

[18] *Outage Map: Outages by County*, Ga. Power, https://outagemap.georgiapower.com/reports/59c1e70f-68f4-4dcb-a92e-c096199a1ebf (Oct. 7, 2024).

[19] *Id.*

50.     In Bulloch County, nearly 36,000 Bulloch County customers were without power at the height of the storm on September 27, and over 4,000 were still without power at 5 pm on October 4.[20]

51.     The massive power outages, combined with related internet and cellular outages, necessarily affected online voter registration. With hundreds of thousands of people without power for varying periods of time, would-be eligible voters could not access computers and the internet to register to vote online. Nor could they access information about the hours and locations of their boards of election to try to register in person instead if those offices were even open.

52.     The closing of many election offices in the wake of Hurricane Helene also meant that many Georgians had no means of registration in person. Georgians without driver's licenses must register in person at the elections office or by mail, but during the week of September 30, county offices, including county boards of election and registration, experienced extensive closures because of Hurricane Helene, greatly limiting the opportunity for eligible individuals to register in person. Based on publicly available information, at least thirty-seven county election boards were closed for some period of time, and at least ten county boards were closed until today.

---

[20] *OFF THE GRID: Bulloch County, Georgia Power Outage Tracker*, USA Today, https://data.usatoday.com/national-power-outage-map-tracker/area/bulloch-county-ga/13031/ (last visited Oct. 7, 2024).

53.     In Lowndes County, as one example, the elections office was closed until today, October 7, the final day of registration.[21]

54.     Similarly, in Richmond County, the elections office was closed on September 27 and did not reopen until October 7.[22]

55.     Even where county offices opened before today, many were forced to operate only intermittently, with periodic outages of power and internet and with limited ability to register individuals to vote.

56.     In Bulloch County, for example, news coverage reported that although the office's doors were locked, elections staff opened a door for a few individuals who knocked for voter registration purposes, and registered a few individuals that way. However, Elections Supervisor Shontay Jones noted that "internet service to the office remained 'kind of shaky' Wednesday," [October 2, and]," and she

---

[21] *County Offices Closed 9/30/24 Through October 4, 2024*, Lowndes Cnty. (Sept. 30, 2024), https://lowndescounty.com/CivicAlerts.aspx?AID=1034; *Lowndes County Will Resume its Regular Business Hours on Monday, October 7, from 8:00 AM to 5:00 PM*, Lowndes Cnty. (Oct. 7, 2024), https://lowndescounty.com/CivicAlerts.aspx?AID=1044; *Lowndes County, GA*, Facebook, https://www.facebook.com/lowndescountyga/ (last visited Oct. 7, 2024).

[22] *Richmond County Board of Elections*, Facebook, https://www.facebook.com/ARCBOE; *In Addition, due to Hazardous Driving Conditions and the Need to Shelter in Place, Poll Worker Training was Cancelled for October 2 and 3*, Richmond Cnty. Bd. of Elections (Oct. 1, 2024), https://www.facebook.com/ARCBOE/posts/pfbid0u4Dx2gVEN4GuqH15dB4EJ2b FsNCzUbwRMLKKwwg7JKb6JntuZ4t1jcJQn9GX2rqEl.

thought that opening the office would not be safe while other county offices

remained closed.[23]

57.     A post on Bulloch County's Facebook page on October 1, 2024 at

2:50 p.m. stated:

> While progress has been made in restoration efforts, the County is still
> facing several challenges. Many roads are still blocked by debris,
> fallen power lines, and malfunctioning traffic signals, especially in
> rural areas. Approximately 88% of rural electric utilities are still not
> functioning and numerous small water systems and private wells are
> out of service due to the power outages. . . . Communication and
> computer systems in county facilities remain unreliable. . . .[24]

58.     The Governor, however, has refused to coordinate with these offices

to extend the voter registration deadline, despite acknowledging Helene's

devastation and the severe impact of voter registration.

59.     Hurricane Helene also badly disrupted mail-in voter registration in

Georgia. The United States Postal Service ("USPS") suspended mail services in

315- and 316- zip codes and closed nearly 100 facilities, including in Bryan,

Bulloch, Burke, Candler, Chatham, Columbia, Effingham, Emanuel, Evans,

Glascock, Jefferson, Jenkins, Laurens, Liberty, Lincoln, McDuffie, McIntosh,

---

[23] Al Hackle et al., *Elections Staff Working, Available by Phone as County Offices Stay Closed Through Friday*, Statesboro Herald (Oct. 3, 2024), https://www.statesboroherald.com/local/elections-staff-working-available-by-phone-as-county-offices-stay-closed-through-friday/.
[24] Bulloch Cnty. Pub. Safety & EMA, UPDATE: CLOSURES AND CANCELLATIONS, Facebook (Oct. 1, 2024), https://www.facebook.com/photo/?fbid=867219412265121&set=a.171281295192273.

Montgomery, Rabun, Richmond, Screven, Tattnall, Toombs, Treutlen, Warren, Wheeler, and Wilkes counties.[25]

60.     In eight postal facilities in Richmond County, all operations were suspended, with no alternative facilities provided, from September 30 to October 4.[26]

61.     In three of Bulloch County's postal facilities, all operations were suspended, with no alternative facilities provided, from September 30 to October 4.

62.     Losing access to voter registration during the final week before the deadline is particularly injurious to voters. Interest in an election tends to increase as Election Day draws closer. Social science research shows that "many people

---

[25] *USPS Temporarily Suspended Mail Delivery and Retail Operations*, USPS (Sept. 28, 2024), https://about.usps.com/newsroom/local-releases/ga/2024/0928-usps-temporarily-suspended-mail-delivery-and-retail-operations.htm; *USPS temporarily suspends services at several Georgia locations*, FOX 5 Atlanta (Sep. 28, 2024), https://www.fox5atlanta.com/news/usps-temporarily-suspends-services-several-georgia-locations.

[26] These included: Blythe, 141 Ginhouse St, 30805; Gracewood, 102 Myrtle Blvd, 30812; Augusta, 525 8th St, 30901; Augusta - Fort Gordon, 411 36th St Bldg., 36302, 30905; Augusta - Peach Orchard, 3108 Peach Orchard Rd, 30906; Augusta - Forest Hills, 3301 Wrightsboro Rd, 30909; Augusta - Hill Station, 1434 Stovall St, 30914; Hephzibah, 4902 Windsor Spring Rd, 30815.

register in the final weeks before presidential elections,"[27] and that "later

registrants are relatively more likely vote."[28]

63.     Data from Georgia's voter files shows that Georgia sees a spike in

registrations in the last week of registration compared to the prior week. In the last

presidential election year, over 57,000 people registered to vote during the week

before the deadline, compared with approximately 36,500 the week prior. During

the 2022 midterms, more than nearly 28,000 people registered to vote during the

week before the deadline, compared with approximately 18,000 the week prior. In

2016, more than twice as many people registered to vote in the final week before

the deadline (about 62,000) than did the week prior (about 24,000). Thus, the

timing of Hurricane Helene could not have been worse for access to participate in

the election in Georgia.

64.     Moreover, 1,418 prospective voters submitted voter registration

applications in Chatham County alone after a federal court ordered the extension of

the voter registration deadline following Hurricane Matthew in 2016. This further

demonstrates that thousands of prospective voters across the state would have

likely registered to vote but for the damage caused by Hurricane Helene.

---

[27] Alex Street et al., *Voter Registration Deadline Effects with Web Search Data*, 23
Pol. Analysis 225, 228 (2015) (citing Bruce E. Cain & Ken McCue, *The Efficacy
of Registration Drives*, 47 J. of Pol. 1221 (1985), and James G. Gimpel, Joshua J.
Dyck, & Daron R. Shaw, Election-Year Stimuli and the Timing of voter
Registration, 13 Party Pol. 351 (2007)).
[28] *Id.* at 351.

65.    Plaintiffs' planned voter registration activities in counties across southern and eastern Georgia were canceled or severely curtailed in the aftermath of Hurricane Helene. Plaintiffs' work has been severely hindered by power outages, internet outages, road closures and blockages, and flooding. Plaintiffs also rely on the county boards of elections for blank voter registration applications, and Plaintiffs submit completed applications and transmittal sheets to the county boards. The closure of several boards of election for an extended time period in the aftermath of Hurricane Helene significantly impaired, or even stopped, the ability of Plaintiffs to carry out voter registration activities in affected counties.

66.    The Coalition for the People's Agenda cancelled voter registration events in Lowndes County, Augusta-Richmond County, and Liberty County, including a tabling event at Valdosta State University in Lowndes County. The People's Agenda's ongoing efforts to assist applicants in registering to vote in high traffic areas in Augusta-Richmond, Burke, Columbia, McDuffie, Screven, Effingham, Bulloch, Bryan, Liberty, Tattnall, Chatham, McIntosh, Wayne, Pierce, Evans, Camden, Lowndes, Brooks, Decatur, Colquitt, Tift, Lee, Warren, and Washington counties were also impeded or entirely prevented by Hurricane Helene. Further, closures of the Lowndes County, Augusta-Richmond County, and Bulloch County board of elections offices from September 30, 2024 to at least October 6, 2024 made it impossible for the People's Agenda to coordinate with

these offices for voter registration purposes during the last week of voter registration.

67.     Similarly, Plaintiff Georgia NAACP was forced to cancel at least ten voter registration events in Valdosta, Lowndes County and Augusta-Richmond County.

68.     Plaintiff NGP was forced to cancel many voter registration canvassing shifts in Lowndes County and Augusta-Richmond County. NGP's Augusta office in Augusta-Richmond County still has not recovered from Hurricane Helene and the office remains closed today on October 7, 2024. As a direct result of the damage caused by Hurricane Helene, NGP's Augusta-Richmond County office did not report a single voter registering to vote with the support of an NGP volunteer, nor did it report any NGP volunteer completing a single canvassing shift.

69.     A significant number of prospective minority voters were affected by the loss of voter registration opportunities due to Hurricane Helene. According to the Georgia Election Hub Database, several counties with significant Black populations were impacted, including Burke (46% of the county's 24,438 residents are Black), Chatham (40.9% of the county's 303,655 residents are Black); Lincoln (26.1% of the county's 7,879 residents are Black); Lowndes (38% of the county's 120,712 residents are Black); McDuffie (40.9% of the county's 21,799 residents are Black); Richmond (59% of the county's 205,414 residents are Black); and Washington (54.1% of the county's 19,820 residents are Black).

70.     The Governor has emphasized the catastrophic nature of Hurricane

Helene. As reported on October 3:

> We've been on the ground, really, from all the way up through, you know,
> Augusta, Evans, and Columbus County," said Gov. Brian Kemp. "And just
> the width of the destruction compared to even Hurricane Michael is so much
> greater. . . . I mean, it's just 100% destruction.

The Governor, however, has thus far refused to extend the voter registration

deadline despite acknowledging the severe impact of Hurricane Helene.

71.     The Governor was notified in a letter dated October 4, 2024, that

several counties impacted by Hurricane Helene were without power; that USPS

suspended mail service to forty-two locations across Georgia; and that Georgians'

access to the political process would be adversely impacted by power outages and

mail service suspensions.

72.     South Carolina, extended its voter registration deadline from October

7 to October 14 as a result of the devastation of Hurricane Helene.[29]

73.     And yet, Governor Kemp has refused to extend the voter registration

deadline in Georgia. Defendants' failure to extend the voter registration deadline

across the state will disenfranchise a significant number of eligible prospective

voters. People who were unable to register by today's deadline cannot vote in the

November 2024 election.

---

[29] https://scdailygazette.com/2024/10/04/court-extends-voter-registration-deadline-10-days-following-storm/.

## FIRST CLAIM FOR RELIEF

### Violation of the First and Fourteenth Amendments
### U.S. Const. amends. I & XIV; 42 U.S.C. §1983
### (Undue Burden on the Right to Vote)

74.    Plaintiffs re-allege and incorporate by reference paragraphs 1–73 above as fully set forth herein.

75.    The First and Fourteenth Amendments of the United States Constitution protect the right to vote as a fundamental right. The First Amendment's guarantees of freedom of speech and association protect the right to vote and to participate in the political process. The right to vote is a fundamental constitutional right also protected by both the due process and equal protection clauses of the Fourteenth Amendment. *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983).

76.    Courts reviewing a challenge to a law that burdens the right to vote "must weigh 'the character and magnitude of the asserted injury to the right[]'" to vote "against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 789).

77.    Georgia's voter registration deadline imposes a severe burden on the fundamental right to vote considering the aftermath of Hurricane Helene. The refusal to extend the deadline in light of the deadly hurricane risks preventing

prospective voters from registering during the last week of early voting and therefore depriving citizens of that right altogether.

78.     In light of the hurricane, the burdens imposed by Georgia's voter registration deadline are undeniably severe, and the Defendants' inaction under these circumstances cannot pass muster even under rational basis review.

79.     The Governor's decision not to extend the deadline is not narrowly drawn to advance any state interest sufficiently compelling to justify the imposition of such severe burdens.

80.     The State cannot show an interest sufficient to justify the burden imposed by its decision not to extend the deadline on Plaintiffs' rights.

81.     There is no sufficient state interest justifying the refusal to extend the voter registration deadline that was not already adequately protected by preexisting election procedures.

82.     Plaintiffs therefore seek a declaratory judgment that, by refusing to extend the voter registration deadline, the Governor and Secretary of State, acting under color of state law, are depriving Plaintiffs of the rights, privileges, and immunities secured to them by the First and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

83.     Plaintiffs are therefore without an adequate remedy at law. Unless the Court orders the Governor and Secretary of State to extend the voter registration

deadline, Plaintiffs will continue to suffer the immediate and irreparable harm described herein.

## SECOND CLAIM FOR RELIEF

### Violation of Section 8 of the NVRA
### 52 U.S.C. § 20507

84.     Plaintiffs re-allege and incorporate by reference paragraphs 1–73 above as fully set forth herein.

85.     Section 8 of the NVRA requires states to process any voter registration form received or postmarked no later than 30 days of an election. 52 U.S.C. § 20507(a)(1). The plain text of Section 8 requires that that registration cutoff may be no more than 30 days before election or such lesser period as State may provide. 52 U.S.C. § 20507(a)(1).

86.     These provisions are intended to ensure that eligible United States citizens have sufficient time to register to vote and are not forced to register to vote more than thirty days in advance of a federal election.

87.     These provisions must be interpreted in the context of the primary purpose of the statute as a whole. Congress's purpose in passing the NVRA was to "increase the number of eligible citizens who register to vote in elections" and "enhance[] the participation of eligible citizens as voters," and to protect the active role that community-based voter registration groups play in the registration process. 52 U.S.C. § 20501.

88.   The NVRA was intended to "ensure that no American is denied the ability to participate in Federal elections because of real or artificial barriers . . . [and] to make voter registration an inclusive, rather than an exclusive opportunity in the United States." 139 Cong. Rec. H495-04 (1993) (statement of Rep. Martin Frost).

89.   Toward that end, the NVRA "provides that the registration cutoff may be no more than 30 days before election or such lesser period as State may provide." H.R. Rep. No. 103-66, at 20 (1993) (Conf. Rep.).

90.   The NVRA also focused on increasing voting access to traditionally disenfranchised communities. It did so by increasing the places open for in-person voter registration. For example, the conference report expressed concern that, unless the bill provided that unemployment offices and other agencies could provide voter registration, "it will exclude a segment of its population from those for whom registration will be convenient and readily available – the poor and persons with disabilities . . . . It is important that no State be permitted to so restrict its agency registration program." H.R. Rep. No. 103-66 (1993) (Conf. Rep.).

91.   Hurricane Helene significantly impaired or effectively foreclosed the ability to register to vote a full seven business days before the thirty-day deadline, all of which fall within the period that the NVRA requires states to provide for voter registration in advance of a federal election. The Governor's refusal to extend

the voter registration deadline in the face of this natural disaster is the type of artificial barrier that the NVRA was designed to protect against.

92.     Hurricane Helene effectively prevented or significantly impaired a substantial number of Georgia residents from registering to vote by the October 7 deadline. Without relief, the right to vote will be denied to significant numbers of eligible county residents.

93.     Since this violation of the NVRA is ongoing less than thirty days before an election for federal office, Plaintiffs are not obligated to provide advance notice to the Secretary of State before bringing a civil action. 52 U.S.C. § 20510(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

2.     Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure Rule 57, declaring that that the refusal to extend the voter registration deadline (a) violates the fundamental right to vote under the First and Fourteenth Amendments; and (b) violates Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20507;

3.     Grant Plaintiffs preliminary or permanent injunctive relief by ordering that Defendants:

    a.       discontinue enforcement of the current voter registration deadline for the State of Georgia; and

    b.       extend the voter registration deadline for the State of Georgia by all methods, including online, in-person, and mail registration, up to and including October 14, 2024; or in the alternative

    c.       discontinue enforcement of the current voter registration deadline, and extend the voter registration deadline by all methods, including online, in-person, and mail registration, for all counties that experienced widespread or prolonged power outages, internet outages, postal service disruptions, and elections office closures, including those listed in this Complaint, and any other County that experienced similar disruptions, to October 14, 2024;

4.     Issue an order requiring Defendants to pay Plaintiffs' costs, expenses, and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by, inter alia, 42 U.S.C. § 1988 and other applicable laws; and

5.     Grant such other and further relief as may be just and equitable.

Respectfully submitted, this 7th day of October 2024.

*/s/ Cory Isaacson*

R. Gary Spencer (Ga. Bar No. 671905)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
260 Peachtree St. NW, Ste 2300
Atlanta, GA 30303
Telephone: (202) 216-5578
Fax: (202) 682-1312
gspencer@naacpldf.org

Cory Isaacson (Ga. Bar No. 983797)
Caitlin May (Ga. Bar No. 602081)
Akiva Freidlin (Ga. Bar No. 692290)
ACLU FOUNDATION OF GEORGIA INC.
P.O. Box 570738
Atlanta, GA 30357
(678) 310-3699
cisaacson@acluga.org
cmay@acluga.org
afreidlin@acluga.org

Amir Badat*
Brenda Wright*
Stuart Naifeh*
John S. Cusick*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
abadat@naacpldf.org
bwright@naacpldf.org
snaifeh@naacpldf.org
jcusick@naacpldf.org

Theresa J. Lee*
Sophia Lin Lakin*
Sara Worth*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org
sw_vrp@aclu.org

DeMetris Causer (Ga. Bar No. 347916)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th St. NW
Washington, D.C. 20005
Telephone: (646) 906-1344
Fax: (202) 682-1312
dcauser@naacpldf.org

Ezra D. Rosenberg*
Julie M. Houk*
Heather Szilagyi*
Grace Thomas*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
hszilagyi@lawyerscommitte.org
gthomas@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under
Law 1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

**Attorneys on behalf of**: Georgia State
Conference of the NAACP and
Georgia Coalition for the People's
Agenda, Inc.

1

Kristen A. Johnson*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6695
Facsimile: (212) 479-6275
kjohnson@cooley.com

Maureen Alger*
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
malger@cooley.com

**Attorneys on behalf of**: Georgia State Conference of the NAACP and Georgia Coalition for the People's Agenda, Inc., and New Georgia Project

*\* Motion for Admission Pro Hac Vice Forthcoming*