**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.; and NEW GEORGIA PROJECT, INC., | Case _____ |
| Plaintiffs, | |
| v. | |
| BRIAN KEMP, Governor of the State of Georgia, in his official capacity, and BRAD RAFFENSPERGER, Secretary of State of Georgia, in his official capacity, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiffs seek an emergency temporary restraining order ("TRO") from this Court to prevent the disenfranchisement of Georgians impacted by the effects of Hurricane Helene and impeded in their ability to register to vote by the existing October 7, 2024 deadline. Residents in many counties across the state have faced, and continue to face, widespread flooding, damaged roadways, power outages, and internet outages, as well as suspended postal service and the closure of county boards of election offices. Compounding these significant issues is the fact that Defendant Secretary of State is aware that the Secretary of State's online voter registration platform has been inaccessible and/or experiencing persistent glitches today. Undersigned counsel have also received multiple reports of voters experiencing difficulty using the Secretary of State's online voter registration platform today.

As such, registering to vote during the crucial period leading up to the voter registration deadline—when Georgia typically sees a significant spike in registrations—has been significantly impeded or impossible for thousands of Georgians. Without a TRO ordering Defendants to allow Georgians additional time to register to vote, innumerable citizens across the state, including those in counties with disproportionately large populations of Black voters, will lose the right to vote in November.

First, the current voter registration deadline violates the First and Fourteenth Amendments to the Constitution in light of the circumstances caused by Hurricane Helene. The constitutionally guaranteed right to vote cannot be abridged without adequate justification, and there is no legitimate state interest that outweighs the burden on Plaintiffs' rights here. Second, Defendants' failure to extend the voter registration deadline to account for the lost week violates the National Voter Registration Act ("NVRA"), which requires states to allow eligible voters to register for a period of time until at least 30 days before Election Day, if not later.

For the reasons set forth below, Plaintiffs respectfully request that this Court order the extension of the voter registration deadline statewide, or, in the alternative, in all counties that have experienced widespread or prolonged power outages, internet outages, postal service disruptions, and/or county office closures, including those listed in Plaintiffs' Complaint, and in any other county that experienced similar disruptions, for a period up to and including October 14, 2024.

## I. FACTUAL BACKGROUND

The voter registration deadline for the November 5, 2024 General Election in Georgia is Monday, October 7, 2024. *See* O.C.G.A. § 21-2-224(a). Georgians cannot vote in the General Election without meeting the registration deadline. *See id.* Due to Hurricane Helene and its aftermath, boards of elections offices in numerous counties were closed in the period between September 27 to October 6. Millions of

people faced, and continue to face, power, internet, and cellular outages during this period; postal facilities in many locations were closed; and prospective voters across the state faced those and other significant hardships that hindered their ability to register to vote in the days leading up to the deadline.

Georgia state law requires that the main elections office in each county "remain open for business during regular office hours on each business day, except Saturday" and "be open at such designated times other than the normal business hours as shall reasonably be necessary to facilitate registration and at such other hours as will suit the convenience of the public." O.C.G.A. § 21-2-215(c). Among other methods, Georgia residents may apply to vote in person at their county elections office or by mailing a paper application to the Georgia Secretary of State or their county elections office.  O.C.G.A. § 21-2-220(a).[1] Applicants with access to

---

[1] Section 21-2-220(a) of the Georgia Code provides in full:

> Any person desiring to register as an elector shall apply to do so by making application to a registrar or deputy registrar of such person's county of residence in person, by submission of the federal post card application form as authorized under Code Section 21-2-219, by making application through the Department of Driver Services as provided in Code Section 21-2-221, by making application through the Department of Natural Resources as provided in Code Section 21-2-221.1, by making application online as provided in Code Section 21-2-221.2, by making application through designated offices as provided in Code Section 21-2-222, or by making application by mail as provided in Code Section 21-2-223.

the internet and a current Georgia driver's license or state identification card may register to vote online. O.C.G.A. § 21-2-221.2.

Hurricane Helene made landfall as a high-end Category 2 hurricane just seven business days before the October 7, 2024 voter registration deadline. https://www.theguardian.com/us-news/2024/oct/02/hurricane-helene-destruction-timeline. Governor Kemp declared a state of emergency for all of Georgia's 159 counties on September 24, 2024. https://gov.georgia.gov/document/2024-executive-order/09242401/download. On September 30, the Georgia Supreme Court issued a Statewide Judicial Emergency Order, which terminates on October 30. https://www.gasupreme.us/wp-content/uploads/2024/09/Helene-Chief-Justice-Emergency-Order-final_signed.pdf. On October 1, 2024, Governor Kemp extended the state of emergency, which remains in effect. https://gov.georgia.gov/document/2024-executive-order/10012401/download.

Moreover, the Georgia Emergency Management and Homeland Security Agency declared a Major Disaster in 41 counties. https://gema.georgia.gov/press-releases/2024-10-02/major-disaster-declared-41-georgia-counties-individual-and-public. The Federal Emergency Management Agency ("FEMA") declared 53 counties as disaster areas for purposes of federal relief to families and individuals. https://www.fema.gov/disaster/4830/designated-areas.

As Defendants are aware from historical data, significant numbers of Georgia residents typically register to vote in the days leading up to the registration deadline. According to an analysis of the data supplied in the Secretary of State's Statewide Voter List, *see* https://georgiasecretaryofstate.net/collections/voter-list-1/products/statewide-voter-list, in the last presidential election year, over 57,000 people registered to vote during the week before the deadline, compared with approximately 36,000 the week prior. During the 2022 midterms, almost 28,000 people registered to vote during the week before the deadline, compared with fewer than 18,000 the week prior. Thus, the timing of Hurricane Helene could not have been worse for access to participate in the election in Georgia.

All methods of voter registration were severely curtailed between September 26 and October 7. Across the state, approximately 1.3 million people suffered power outages after the storm, preventing access to online voter registration. https://www.ajc.com/news/crime/helene-in-georgia-death-toll-rises-to-33-nearly-300k-still-without-power/CK5O5AUOPFBMLASFJD7I4PVTGY/. Nearly 300,000 residents remained without power as of October 3. https://www.wtoc.com/2024/10/03/georgia-death-toll-hurricane-helene-rises-33-

gov-kemp-says/. As of 9:00 PM on October 6, many people remained without power in at least 26 counties.[2]

Registration was also significantly impeded for Georgians who needed to register to vote in person. Based on publicly available information,[3] at least thirty-seven county election boards were closed for some period of time following the storm,[4] and at least ten county boards remained closed until today.[5]

Hurricane Helene also caused major disruptions for mail-in voter registration in Georgia. The United States Postal Service ("USPS") suspended mail services the in 315- and 316- zip codes and closed dozens of facilities, including in Montgomery, Wheeler, Columbia, Jefferson, Evans, Richmond, Warren, Tattnall, McIntosh,

---

[2] By County, Georgia Power Outage Map, https://outagemap.georgiapower.com/reports/59c1e70f-68f4-4dcb-a92e-c096199a1ebf (last visited October 6, 2024, 8:50 PM).

[3] Counsel surveyed county websites and social media pages to collect information on county board closures. Many counties did not include information on closures, so the actual number of counties that experienced closures is likely significantly higher. Due to interruptions in internet and cellular service, those trying to register would also have had difficulty accessing information about these closures and reopenings, even if the information was publicly available online.

[4] USPS Temporarily Suspended Mail Delivery and Retail Operations - Georgia newsroom - About.usps.com (last visited Oct. 6, 2024, at 11:27p.m. ET); Fox 5 Atlanta, USPS temporarily suspends services at several Georgia locations, Yahoo.com (Sep. 28, 2024), https://www.yahoo.com/news/usps-temporarily-suspends-services-several-030916824.html (last visited Oct. 6, 2024, at 11:35 p.m.).

[5] These include Bulloch, Columbia, Jefferson, Lowndes, Richmond, and Toombs.

McDuffie, Screven, Effingham, Bryan, Emanuel, Glascock, Burke, Wheeler, Rabun, Lincoln, Toombs, Candler, Jenkins, Bulloch, Wilkes, Liberty, and Laurens counties.[6]

Plaintiffs and their members experienced the impact of Hurricane Helene on the opportunity for eligible Georgians to register to vote first-hand. Plaintiffs Georgia Coalition for the People's Agenda ("GCPA" or "People's Agenda") and Georgia State Conference of the NAACP ("GA NAACP") have members across Georgia, including in the southern and eastern parts of the state. Decl. of Helen Butler ("Butler Decl."), attached hereto as Exhibit 1, ¶ 5; Decl. of Gerald Griggs ("Griggs Decl."), attached hereto as Exhibit 2, ¶¶ 6–9. Promoting and protecting the voting rights of Black voters, other voters of color, and underserved communities is central to the mission of Plaintiffs GCPA, GA NAACP, and New Georgia Project ("NGP"). Butler Decl. ¶ 4; Griggs Decl. ¶ 4; Decl. of Francys Johnson ("Johnson Decl."), attached hereto as Exhibit 3, ¶ 3. Plaintiffs undertake voter registration efforts throughout Georgia, including in the southern and eastern parts of the state, in service of this mission. *See* Butler Decl. ¶¶ 7–8; Griggs Decl. ¶ 10; Johnson Decl.

---

[6] USPS Temporarily Suspended Mail Delivery and Retail Operations - Georgia newsroom - About.usps.com (last visited Oct. 6, 2024, at 11:27p.m. ET); Fox 5 Atlanta, USPS temporarily suspends services at several Georgia locations, Yahoo.com (Sep. 28, 2024), https://www.yahoo.com/news/usps-temporarily-suspends-services-several-030916824.html (last visited Oct. 6, 2024, at 11:35 p.m.).

¶¶ 6–8. Hurricane Helene and Defendants' refusal to extend the voter registration deadline has frustrated that mission.

Plaintiffs' planned voter registration activities in counties across southern and eastern Georgia were canceled or severely curtailed in the aftermath of Hurricane Helene. For example, the voter registration efforts of Plaintiff GCPA traditionally increase in number and intensity as the voter registration deadline approaches, with the heaviest activity generally occurring in the days leading up to the close of voter registration. Butler Decl. ¶ 8. The People's Agenda planned to make its final efforts to register new voters between Friday, September 27, and Monday, October 7, in counties across the southern and eastern parts of the state, including Augusta-Richmond, Burke, Columbia, McDuffie, Screven, Effingham, Bulloch, Bryan, Liberty, Tattnall, Chatham, McIntosh, Wayne, Pierce, Evans, Camden, Lowndes, Brooks, Decatur, Colquitt, Tift, Lee, Warren, and Washington counties. Butler Decl. ¶¶ 7, 10. Because Hurricane Helene and its aftermath created conditions which would not allow GCPA coordinators, volunteers, and canvassers to safely or effectively conduct voter registration activities, efforts to register voters in typically high traffic areas in these counties were significantly impaired, if not stopped completely. Butler Decl. ¶¶ 12–14. The People's Agenda also had voter registration events in Lowndes County, Augusta-Richmond County, and Liberty County scheduled to take place between September 27 and October 7 that the organization

was forced to cancel because of Hurricane Helene, including an event at Valdosta State University in Lowndes County. Butler Decl. ¶ 11.

The People's Agenda relies on county boards of registrars to supply blank paper voter registration applications and then returns transmittal summary sheets and the completed voter registration applications to the county boards. Butler Decl. ¶ 9. Hurricane Helene caused significant power outages, internet outages, property damage, road closures and blockages and flooding. Butler Decl. ¶ 14. In the aftermath of the storm, county registrar offices in Lowndes County, Augusta-Richmond County, and Bulloch County were closed from at least September 30 to October 6, and as a result, the People's Agenda was not able to pick up or return voter registration applications in those counties. Butler Decl. ¶ 15.

Plaintiff GA NAACP voter registration activities were also stalled by Hurricane Helene. Prior to Hurricane Helene, GA NAACP planned several local voter registration drives, particularly in Valdosta, Lowndes County, and Augusta-Richmond County. Griggs Decl. ¶ 15. However, as a result of the conditions posed by Hurricane Helene and its aftermath, GA NAACP was forced to cancel at least ten of these events. Griggs Decl. ¶¶ 15–16. All GA NAACP branches were closed between September 27, 2024, and October 4, 2024, as a result of the hurricane, and the Augusta-Richmond County and Coffee County branches are still closed as of today. Griggs Decl. ¶ 17.

Plaintiff NGP also experienced significant disruption to their activities as a result of Hurricane Helene. NGP was forced to cancel several door-to-door canvassing voter registration shifts targeting Black residents in Lowndes and Augusta-Richmond counties from October 4 to October 7. Johnson Decl. ¶ 11. NGP's Augusta office in Augusta-Richmond County still has not recovered from Hurricane Helene, and the office remains closed today on October 7, 2024. Johnson Decl. ¶ 12. NGP also needs to coordinate with county registrar offices in order to conduct its voter registration activities, and the organization was unable to coordinate with the Augusta-Richmond County Board of Elections office from September 27, 2024, at least through October 6, 2024, because the office has been closed. Johnson Decl. ¶ 15. Because of the closure of the county registrar and NGP's own office, and road closures, power outages, and other damage caused by Hurricane Helene, NGP's Augusta-Richmond office did not report supporting any Georgian in registering to vote or any NGP volunteer completing a canvassing shift last week. Johnson Decl. ¶¶ 12–15.

## II.    ARGUMENT

The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010). To obtain a TRO, the moving party must demonstrate that: (1) "it has a substantial likelihood of success on the merits;" (2) "irreparable injury will be

suffered unless the injunction issues;" (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;" and (4) "if issued, the injunction would not be adverse to the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). All four factors weigh in favor of Plaintiffs, and Plaintiffs are entitled to a TRO.

### A. Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

### 1. The Current Voter Registration Deadline Imposes a Severe Burden on the Right to Vote Without Sufficient Justification.

Plaintiffs are likely to succeed on the merits of their claims. The right to vote "is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citation omitted); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *Georgia Coal. for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344, 1345 (S.D. Ga. 2016) ("An individual's ability to participate in local and national elections is arguably the most cherished right enshrined in our constitution."). In assessing whether a voting practice or procedure unconstitutionally burdens the right to vote, courts apply the *Anderson-Burdick* test to "weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." *Democratic Exec. Comm. of Fla. v. Lee*, 915

F.3d 1312, 1318 (11th Cir. 2019). Thus, "the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

In light of the devastating effects of Hurricane Helene, the burden on the right to vote imposed by the existing registration deadline is severe—effectively a complete deprivation. Hurricane Helene significantly impeded or effectively canceled voter registration opportunities across the state throughout the entire week leading up to the deadline. Compounding this harm is the fact that, according to analysis of data from the Secretary of State's Statewide Voter List, *see* https://georgiasecretaryofstate.net/collections/voter-list-1/products/statewide-voter-list, Georgia voter registrations spike in the last week of registration even compared to the prior week. In the 2020 presidential election, the final week of voter registration was almost 58% up from the prior week. This was no anomaly, as the final week of the 2022 midterm elections similarly saw an increase in registrations of almost 56%. More than two and a half times as many people registered to vote in the final week of registration in 2016 than during the week prior, for a total of more than 60,000. These patterns demonstrate that the number of eligible Georgians who planned to register in the final week was likely very high, and that the impact of Hurricane Helene's effects was therefore even greater. And because these voters

have not been able to register, failing to extend the registration deadline means they will not be able to vote in the 2024 election.

While the total impact is impossible to calculate, at least 1.3 million Georgia residents suffered power outages; 300 Georgia roads were made impassable; and approximately 60,000 miles of road were severely impacted.[7] And as of October 6, at 9 p.m., there were still many people without power in at least Appling, Bacon, Berrien, Chatham, Coffee, Columbia, Dekalb, Echols, Emanuel, Fulton, Glascock, Glynn, Jeff Davis, Jefferson, Lincoln, Lowndes, McDuffie, Montgomery, Richmond, Tattnall, Telfair, Terrell, Toombs, Treutlen, Ware, and Warren counties.[8]

Governor Kemp and Secretary Raffensperger have failed to rectify this impairment by extending the voter registration deadline. Because of the statewide nature of the crisis, the parties request a statewide response: to extend the ability of Georgians to register to vote.

---

[7] Rosanna Hughes, *Helene in Georgia: More than 400,000 Still Without Power*, Atlanta Journal-Constitution (Oct. 2, 2024) https://www.ajc.com/news/crime/helene-in-georgia-more-than-400000-still-without-power-vp-harris-to-visit/MDSIPBQ5IVBZXPROZQMDICHPLA/; *see also*, Rosanna Hughes, *Helene in Georgia: Death Toll Rises to 33; Nearly 300k Still Without Power*, Atlanta Journal-Constitution (Oct. 3, 2024) https://www.ajc.com/news/crime/helene-in-georgia-death-toll-rises-to-33-nearly-300k-still-without-power/CK5O5AUOPFBMLASFJD7I4PVTGY/
[8] By County, Georgia Power Outage Map, https://outagemap.georgiapower.com/reports/59c1e70f-68f4-4dcb-a92e-c096199a1ebf (last visited October 6, 2024, 8:50 PM).

Courts faced with similar situations following a hurricane coinciding with the statutory voter registration deadline have found that an extension was warranted. In 2016, the U.S. District Court for the Southern District of Georgia found that injunctive relief to extend the voter registration deadline was justified in light of "the physical, emotional, and financial strain Chatham County residents faced in the aftermath of Hurricane Matthew." *Georgia Coal. for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344, 1345 (S.D. Ga. 2016). The court noted that while "the extension would present some administrative difficulty," especially as the extended registration deadline would now fall after the start of advance voting—which Plaintiffs here do not request—allowing impacted voters additional time to register to vote under the circumstances was "a rather small consolation on behalf of their government." *Id.* at 1345–46.

Similarly, the U.S. District Court for the Northern District of Florida ordered an extension of the voter registration deadline following the destruction of Hurricane Matthew. *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1259 (N.D. Fla. 2016). The court found that the rights of Florida voters were severely burdened because the state's statutory framework "would categorically deny the right to vote to those individuals" who were prevented from registering to vote and voting in the upcoming election due to the hurricane. *Id.* at 1257. Comparatively, "the burden on the State [] in extending voter registration [was], at best de minimis." *Id.* (noting that

14

other states had extended their deadlines and that many states permitted same-day registration).

Most recently, and in response to Hurricane Helene, a court in South Carolina extended the voter registration deadline statewide due to the "extensive flooding and wind damage across much of South Carolina," the "[n]umerous county courthouses and other state and local offices [that] were closed on Friday, September 27, 2024," and the persistent power outages. *South Carolina Democratic Party v. Knapp*, No. 2024-cp-40-05967, at *3 (S.C. Com. Pl. Oct. 4, 2024). The court found that "[a]lthough not every county in the State has been affected in the same way, all the counties have been impacted, as recognized by the [statewide] orders and declaration that affect all or significant parts of the State. The [state] Constitution recognizes that standards for voting must be uniform statewide. Therefore, the new deadline must apply statewide." *Id.* at *4. The devastation in Georgia warrants the same response from this Court.

Moreover, after a court-ordered extension of the voter registration deadline in Chatham County, Georgia, in 2016, a total of 1,418 prospective voters submitted voter registration applications during the time period of the extension (*See* Exhibit 4, Plaintiffs' Status Report). These voters would have been disenfranchised as a result of Hurricane Matthew without judicial intervention. Plaintiffs here are asking

for the same relief that ensured voters in Chatham County did not lose their fundamental right to vote in 2016.

### 2. Defendants' Failure to Extend the Voter Registration Deadline Violates the NVRA.

Plaintiffs are also likely to succeed on their claim that Defendants' failure to extend the voter registration deadline violates the NVRA. Specifically, Section 8 of the NVRA requires states to process any voter registration form received or postmarked no later than the lesser of 30 days before an election or a period set by state law. 52 U.S.C. § 20507(a)(1). Each State is required to "ensure" that eligible applicants are registered to vote if they appropriately submit an application "not later than the lesser of 30 days, or the period provided by State law, before the date of the election." 52 U.S.C. § 20507(a)(1)(A)–(D).

The State has set a voter registration deadline that facially complies with this provision under ordinary circumstances. Because Hurricane Helene effectively foreclosed the ability of eligible Georgians to register to vote by all methods, failing to extend the voter registration deadline in the face of a natural disaster that stripped prospective voters of their opportunity to register to vote during the final days of the voter registration period effectively moved the deadline back by more than a week, in violation of this provision. While this early closure of voter registration was the result of the hurricane and not the fault of election officials, the violation of the NVRA—and its effect on voters—is the same.

Failing to extend the deadline is inconsistent with the very purpose of the NVRA, which is, unequivocally, to expand the franchise—to "increase the number of eligible citizens who register to vote in elections" and "to enhance[] the participation of eligible citizens as voters." 52 U.S.C. § 20501. The NVRA was enacted "to ensure that no American is denied the ability to participate in Federal elections because of real or artificial barriers … [and] to make voter registration an inclusive, rather than an exclusive opportunity in the United States." 139 Cong. Rec. H495-04 (1993) (statement of Rep. Martin Frost).

The NVRA was particularly concerned with addressing and mitigating barriers to registration. Its Senate sponsors acknowledged that "[w]hile most contributing factors may not be affected by legislation, one—difficulties encountered by some who desire to register to vote—is susceptible to correction by legislation." S. Rep. 103-6, at 2 (1993). Similarly, House members recognized that "[t]he unfinished business of registration reform is to reduce these obstacles to voting to the absolute minimum while maintaining the integrity of the electoral process." H.R. Rep. 103-9, at 3 (1993). In contrast, denying the request to extend the registration deadline thwarts Congress's purpose in passing the NVRA: to "increase the number of eligible citizens who register to vote" and "enhance[] the participation of eligible citizens as voters." 52 U.S.C. § 20501. Failing to extend the deadline constitutes exactly the type of artificial barrier that the NVRA was designed to

protect against. Plaintiffs are likely to succeed on their NVRA claim, and this factor weighs in favor of Plaintiffs.

### B.  A TRO Is Necessary to Avoid Irreparable Harm.

The second TRO factor weighs in favor of Plaintiffs. The violation of a citizen's right to vote is the quintessential injury justifying an injunction. *See, e.g.*, *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000) ("[B]y finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made."); *Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005) ("[T]he right to vote is a fundamental right and is preservative of all other rights. Denying an individual the right to vote works a serious, irreparable injury upon that individual."); *Fla. Democratic Party*, 215 F. Supp. 3d at 1258 ("This is not a case where failing to grant the requested relief would be a mere inconvenience to Plaintiff and its members. Instead, if aspiring eligible Florida voters are barred from registering to vote then those voters are stripped of one of our most precious freedoms.").

Absent action by this Court, the likely thousands of voters who could not register while power was down, roads were impassible, and county election and post offices were closed will be unfairly disenfranchised,  an injury that can never be undone. Thus, prospective voter registration applicants will suffer irreparable harm unless the Court grants the requested relief.

## C. The Threatened Injury to the Right to Vote Outweighs Any Administrative Inconvenience to Defendants.

The third TRO factor also weighs in Plaintiffs' favor. As discussed above, the harm that would come from eligible Georgians who were prevented from registering to vote because of a natural disaster will be disenfranchised would be immeasurable. On the other hand, the requested relief will not subject Defendants to any unreasonable hardship under the circumstances. Unlike in *Deal*, Plaintiffs' requested relief would not require registration to extend into the advance voting period.  214 F. Supp. 3d at 1345 (granting extension of voter registration deadline even where county would face some administrative inconvenience from extending deadline until after start of advance voting). While there may be some administrative inconvenience in extending the voter registration deadline, such inconvenience would not be a sufficient burden to justify disenfranchising eligible Georgians. As in Florida following Hurricane Matthew, Georgia "has the ability to set its own deadlines and has an interest in maintaining those deadlines. But it would be nonsensical to prioritize those deadlines over the right to vote, especially given the circumstances here." *Fla. Democratic Party*, 215 F. Supp. 3d at 1258.

## D. A TRO Is in the Public Interest.

The public interest will be best served by allowing every eligible resident of Georgia to register and cast a vote, thereby preserving this fundamental right and fostering trust in the integrity of the elections. *See Fla. Democratic Party*, 215 F.

Supp. 3d at 1258; *Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1271 (W.D. Wash. 2006); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs,* 118 F. Supp. 3d 1338, 1348–49 (N.D. Ga. 2015); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

In sum, relief from this Court is urgently needed to protect Georgians against the deprivation of fundamental voting rights enjoyed by citizens under the Constitution and laws of the United States. Unless the requested relief is granted, thousands of prospective voter registration applicants are likely to be disenfranchised solely as a result of a natural disaster that was totally outside of their control. Such a result would be not only unfair, but a violation of their fundamental right to vote and a violation of the National Voter Registration Act.

## III.    RELIEF REQUESTED

Plaintiffs respectfully request the Court grant their emergency motion for a temporary restraining order and grant the following relief:

1. discontinue enforcement of the current voter registration deadline for the State of Georgia, and

2. extend the voter registration deadline for the State of Georgia by all methods, including online, in-person, and mail registration, up to and including October 14, 2024; or, in the alternative,

3. discontinue enforcement of the current voter registration deadline, and extend the voter registration deadline by all methods, including online, in-person, and mail registration, for all counties that have experienced widespread or prolonged power outages, internet outages, postal service disruptions, or office closures, including those listed in Plaintiffs' Complaint, and any other county that experienced similar disruptions, up to and including October 14, 2024.

## CONCLUSION

Plaintiffs respectfully request that this Court grant Plaintiffs' motion for a temporary restraining order and preliminary injunctive relief.

Respectfully submitted, this 7th day of October 2024.

*/s/ Cory Isaacson*

R. Gary Spencer (Ga. Bar No. 671905)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
260 Peachtree St. NW, Ste 2300
Atlanta, GA 30303
Telephone: (202) 216-5578
Fax: (202) 682-1312
gspencer@naacpldf.org

Brenda Wright*
Stuart Naifeh*
Amir Badat*
John S. Cusick*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
bwright@naacpldf.org
snaifeh@naacpldf.org
abadat@naacpldf.org
jcusick@naacpldf.org

DeMetris Causer (Ga. Bar No. 347916)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th St. NW
Washington, D.C. 20005
Telephone: (646) 906-1344
Fax: (202) 682-1312
dcauser@naacpldf.org

**Attorneys on behalf of**: Georgia State
Conference of the NAACP and
Georgia Coalition for the People's
Agenda, Inc.

Cory Isaacson (Ga. Bar No. 983797)
Caitlin May (Ga. Bar No. 602081)
Akiva Freidlin (Ga. Bar No. 692290)
ACLU FOUNDATION OF GEORGIA INC.
P.O. Box 570738
Atlanta, GA 30357
(678) 310-3699
cisaacson@acluga.org
cmay@acluga.org
afreidlin@acluga.org

Theresa J. Lee*
Sophia Lin Lakin*
Sara Worth*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org
sw_vrp@aclu.org

Ezra D. Rosenberg*
Julie M. Houk*
Heather Szilagyi*
Grace Thomas*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
hszilagyi@lawyerscommitte.org
gthomas@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under
Law 1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Kristen A. Johnson*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6695
Facsimile: (212) 479-6275
kjohnson@cooley.com

Maureen Alger*
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
malger@cooley.com

**Attorneys on behalf of**: Georgia State Conference of the NAACP and Georgia Coalition for the People's Agenda, Inc., and New Georgia Project

*Motion for Admission Pro Hac Vice Forthcoming*