IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.; and NEW GEORGIA PROJECT, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> BRIAN KEMP, Governor of the State of Georgia, in his official capacity, and BRAD RAFFENSPERGER, Secretary of State of Georgia, in his official capacity, <br><br> *Defendants.* | Civil Action File No.: 1:24-cv-45461-ELR |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION[1]

Defendants Brian Kemp, Governor of the State of Georgia, and Brad Raffensperger, Georgia Secretary of State (collectively, "State Defendants") submit

---

[1] Though Plaintiffs have not formally filed a motion for preliminary injunction, on October 9, 2024, this Court held a hearing on their motion for a temporary restraining order. The Court construed the motion as a combined motion for a temporary restraining order and preliminary instruction, denying the motion for temporary restraining order but deferring ruling on the motion for preliminary injunction to allow for briefing and an evidentiary hearing. *See* Minute Order of October 10, 2024.

the following response in opposition to Plaintiffs' Motion for Preliminary Injunction:

## FACTUAL BACKGROUND

Georgians may register to vote at any time except within 28 days of a primary or election. O.C.G.A. § 21-2-224(a). The deadline to register to vote in the 2024 General Election was October 7, 2024. *Id.* Although the Secretary of State maintains the statewide voter registration database as the state's designated chief elections official, county registrars are responsible for receiving and processing new voter registrations and maintaining their county's list of registered voters. The Secretary of State has no statutory authority to extend the voter registration deadline, even under his limited emergency powers. *See* O.C.G.A. § 21-2-50.1. Georgia provides many ways to register to vote. Georgia residents can register to vote with the Department of Driver Services (DDS), over the internet via the Secretary of State's online voter registration system (OLVR), through designated state agencies, or by delivering a completed voter registration application to the county registrar. *See* O.C.G.A. § 21-2-220(a). Third-party organizations may also register voters and return the completed voter registration forms to county registrars or to the Secretary of State's office. Evans Declaration ¶ 4. Any paper

voter registration application delivered the Secretary of State's office is sent directly to the county registrars to process. *Id.*

Most Georgians choose to register to vote or update their voter registration through DDS. *Id.* ¶ 5. Many also take advantage of the option of registering online through the Secretary of State's online voter registration system (OLVR) or updating their voter registration information through the Secretary of State's online My Voter Page (MVP). *Id.* Of the 3.1 million registration-related transactions since January 1, 2024, 69% came through DDS, 12% came through OLVR or MVP, and 19% were submitted via a paper transaction, including submitting a voter registration application. Because of the many easy options for voter registration, it is estimated that 96% of the eligible voting-age population in Georgia is registered to vote. Evans Declaration ¶ 11.

On the last day for voter registration on October 7, 2024, there were over 10,000 voter registrations submitted through OLVR, in addition to paper applications received by county registrars. *Id.* ¶ 6. Since the close of voter registration, county registrars continued to process voter registration applications and change requests, and that work needs to be completed before the start of advance voting on October 15, 2024 to ensure that eligible voters who submitted timely registrations can vote. *Id.* As of October 7, 2024, counties were still

processing approximately 51,000 OLVR applications, 34,000 DDS applications, and 21,000 change requests through MVP. *Id.* ¶ 7. Additionally, there are several thousand paper voter registration applications that were delivered to the Secretary of State's office that are being delivered to county registrars to process. *Id.*

Hurricane Helene presented challenges for county elections offices in the hardest-hit areas, mostly due to power outages and road closures. Evans Declaration ¶ 8. The Secretary of State has been in continuous contact with county elections officials, GEMA, and the USPS to assess damage to the affected areas, including elections offices, polling locations, and USPS offices. *Id.* The situation continues to improve daily as power is restored to the affected areas. *Id.* Except for limited power and internet outages, all central election offices seem to be spared from major damage. *Id.* Only 4 counties that we are aware of have sustained damage to a few polling locations, including Atkinson, Lowndes, Columbia, and Richmond. *Id.*

Despite these challenges, voter registration activity has continued at a regular pace since Hurricane Helene. As of October 8, 2024, data generated from the state's voter registration database shows that **46,975** voter registration transactions were processed by counties between September 26 to October 7, 2024. Evans Declaration ¶ 9. During this time, counties continue to process tens of

thousands of additional registrations and change requests that came in through the registration deadline. *Id.* While the storm has affected some aspects of election administration in the affected counties, the Secretary of State's office has not received reports that any county has been unable to process voter registrations due to the impacts of Hurricane Helene. *Id.*

It is critical to the orderly administration of the 2024 General Election that the voter registration deadline be enforced so that the list of registered voters is as close to complete as possible before voters start to vote in person on October 15, 2024. Evans Declaration ¶ 10. County registrars began issuing absentee ballots on October 7, 2024. *Id.* Re-opening the voter registration period outside of what is permitted by law will place additional burdens on county election officials while they need to be focused on the time-consuming tasks of processing timely-submitted voter registration applications, processing change requests, issuing absentee ballots, and preparing for advance voting. *Id.* Moreover, last-minute changes to the voter registration system can lead to the risk of error in processing registrations. *Id.*

## **ARGUMENT AND CITATION OF AUTHORITY**

Georgia's voter registration deadline is undoubtedly constitutional. However, the functions of our electoral system can be disrupted when emergency

situations such as hurricanes arise. In extreme circumstances, such as those that render polling places inaccessible or when mass evacuations are required during an election, courts may prevent or remedy constitutional violations by postponing elections or modifying the rules covering them. Morley, Michael T., Symposium: Election Emergencies: Voting in the Wake of Natural Disasters and Terrorist Attacks, 67 Emory L.J. 545 (2018). However, "the Constitution virtually never requires courts to extend deadlines for activities people have a substantial period of time to perform, including registering to vote or participating in early voting." *Id.* at 545. While it is possible that some Georgians that chose to wait until the end of a lengthy registration period may have found their plans to register to be disrupted by Hurricane Helene, the State also has an important interest in adhering to its voter registration deadline in the wake of this emergencies to allow local officials to focus their resources on recovering from the emergency, ensuring the accuracy of the voter registrations that they have received, relocating polling places where necessary, and ensuring adequate staffing for the early voting period that begins in five days. *Id.* at 592-93. Therefore, even if some individuals' circumstances could give rise to an as-applied due process claim warranting relief specifically for those individuals, the state of emergency presented by Hurricane Helene does not warrant extending the voter registration deadline on a statewide basis.

In this action, Plaintiffs have not established a right to the extraordinary remedy of a preliminary injunction. As discussed in Defendants' pre-hearing brief on issues of standing (filed contemporaneously herewith), Plaintiffs have not established that they possess Article III standing to provide this Court with jurisdiction to issue the injunction they request. But even if this Court determines that it does have jurisdiction, they fail to meet the standards for the grant of a preliminary injunction, as they cannot demonstrate a likelihood of success on the merits, any threatened injury to the movants outweigh the harms that their requested injunction would cause the State, and their requested injunction is adverse to the overall public interest. Plaintiffs' motion should therefore be denied.

## I.     Plaintiffs Have Not Met Their Burden of Showing That They are Entitled to a Preliminary Injunction.

A preliminary injunction in advance of trial is an extraordinary measure. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  In order to prevail on a motion for preliminary injunction, the movant must show: 1) a substantial likelihood of prevailing on the merits; 2) that the plaintiff will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and 4) that if

7

issued, the injunction would not be adverse to the public interest." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *Levi Strauss and Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995). A preliminary injunction is a drastic remedy "which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

Plaintiffs have the burden of establishing their entitlement to a preliminary injunction. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009). Because Plaintiffs are seeking a mandatory injunction, which are particularly disfavored, the burden is further heightened, and Plaintiffs must show that the facts and the law *clearly* favor them. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Plaintiffs' motion for a preliminary injunction should be denied because they have not shown any of the elements necessary to support their request for this extraordinary remedy.

### A. Plaintiffs Cannot Show That They Will Suffer Irreparable Harm Absent the Granting of a Preliminary Injunction.

Plaintiffs have not shown that they will suffer irreparable harm if a preliminary injunction is not granted. "A showing of irreparable harm is the 'sine qua non' of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.

2000) (citations omitted).  When a plaintiff has not shown a likelihood of success on the merits, claims for irreparable injury based on an alleged constitutional injury have no merit.  *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  Here, Plaintiffs have failed to show irreparable harm because they have not shown a likelihood of success on the merits.

There is no reason to question whether Georgia's voter registration law is facially constitutional. The U.S. Constitution gives States the power to set the times, places and manner of holding elections for federal offices (U.S. Const., art. I, § 4, cl. 1), and that power "is matched by state control over the election process for state offices." *Clingman v. Beaver*, 544 U.S., 581, 586 (2005). While the right to vote is undoubtedly important, "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takashi,* 504 U.S. 428, 441 (1992).

Voter registration deadlines are part of the regulatory election scheme in Georgia's election code.[2]  The Court recognizes "registration requirements for . . .

---

[2] The Supreme Court has upheld voter registration deadlines of fifty (50) days prior to an election as constitutional. *Burns v. Fortson*, 410 U.S. 686 (1973); *Martson v. Lewis*, 410 U.S. 679, 680 (1973) (recognizing that "States have valid and sufficient interests in providing some period of time – prior to an election – in order to prepare adequate voter records and protect its electoral processes from possible

voters . . . are 'classic' examples of permissible regulation." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 196 n. 17 (1999). Plaintiffs do not appear to contend otherwise; instead, they claim that the circumstances presented by Hurricane Helene would render the application of these otherwise constitutional requirements unconstitutional as violations of the First and Fourteenth Amendments. *See* Doc. 2-1 at p. 2.

This Court must evaluate these claims under the *Anderson-Burdick*[3] framework. *See New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1280 (2020). Under *Anderson-Burdick*, courts must weigh the "character and magnitude of the burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997). If a state's rule imposes a "severe burden" on the right to vote, the rule survives only if it is "narrowly tailored" and only if the State advances a "compelling interest." *Id.* But if a rule imposes only "reasonable nondiscriminatory restrictions," then the State's "important regulatory interests will usually be

---

fraud."). Of course, today, a 50 day registration period would violate the NVRA, but it does not offend the constitution.

[3] *Anderson v. Celebreeze,* 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

enough" to justify it. *Id.* Here, Georgia's voter registration deadline is both reasonable and nondiscriminatory, and its regulatory interests are compelling.

> **1. Georgia's voter registration does not severely burden the right to vote.**

Plaintiffs cannot establish that Georgia's voter registration deadline places a severe burden on the right to vote – even in an emergency situation. Where, as here, voters have an extended period of time to engage in an activity, such as registering to vote, the Constitution generally does not entitle them to deadline extensions due to election emergencies. Morely, *supra*, 67 Emory L.J. at 592. Indeed, the evidence in this case may not establish a burden on the right to vote at all. *See New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1281 (11th Cir. 2020)(holding that deadline for submitting absentee ballots did not implicate the right to vote at all, even in light of circumstances presented by COVID-19 pandemic, where law "provided numerous avenues to mitigate chances that voters will be unable to cast their ballots."

Here, as in *New Georgia Project*, Georgia's voter registration laws provide numerous avenues to help mitigate any difficulties that Georgia voters may have had in registering to vote due to Hurricane Helene. If their local registrar's office was closed or inaccessible, voters could register online via the Secretary of State's

OLVR or MVP, via the Department of Driver Services (O.C.G.A. § 21-2-221), at their Department of Natural Resources (O.C.G.A. § 21-2-221.1), or by mailing their application to the Secretary of State or their local registrar (O.C.G.A. § 21-2-223). Further, local registrars have the option to open additional temporary registration locations in the event of a disruption to their main location. O.C.G.A. § 21-2-215. This Court must weigh how these options mitigate the deadline's impact on the ability to register to vote even in light of the circumstances presented by Hurricane Helene. *New Georgia Project*, 976 F.3d at 1282.

As the United States District Court for the Southern District of Georgia stated in denying a similar request to extend voter registration deadlines following Hurricane Matthew:

> What happened in this case is that a natural disaster coincided with Georgia's constitutionally valid voter registration deadline. This natural event made it difficult, but not impossible, for certain residents of the five counties to properly register to vote prior to the October 11 deadline. The Court recognizes that individuals possibly returned to the area to find their homes damaged and without electricity. It is entirely understandable that these individuals gave little consideration to registering to vote prior to the October 11 deadline. However, these circumstances are not impediments created by the State of Georgia that require it to provide an extension to the voter registration deadline.

*Bethea v. Deal*, No. CV-216-140, 2016 U.S. Dist. LEXIS 144861, *6-7, (S.D.Ga. Oct. 19, 2016). Therefore, even under the circumstances, the burden presented by

12

Georgia's voter registration deadline – if any – is slight, and a compelling state interest is not required. *New Georgia Project*, 976 F.3d 1282. A reasonable regulatory interest is all that should be required (*Id.*), and Georgia's regulatory interest far outweighs any burdens placed upon voters by Georgia's voter registration deadline.

### 2. Georgia Has a Compelling State Interest in Enforcement of its Voter Registration Deadline.

Georgia's interests in adhering to its voter registration deadlines are particularly strong and have been well-recognized by courts. *See Marston v. Lewis,* 410 U.S. 679 (1973)(per curiam)("States have valid and sufficient interests in providing for *some* period of time – prior to an election – in order to prepare adequate voter records and protect its electoral processes from possible fraud")(emphasis supplied); *Diaz v. Cobb*, 541 F.Supp.2d 1319, 1334-35 (S.D. Fla. 2008)(" The requirement that voter registration applicants submit complete and correct applications before [registration deadline] affords certainty and predictability and allows election officials to direct their exclusive and tireless attention to election management and preparation. In doing so, it decreases the confusion and distraction that to some degree already abound of necessity and thereby reduces the risk of error and disorder in Florida's election process.").

In the wake of an emergency, a state's interest in its voter registration deadline is even stronger. The deadline allows state officials to "focus their resources on recovering from the emergency, ensuring the accuracy of voter registrations they have received, relocating polling places as needed, ensuring adequate staffing for the voting period, and otherwise minimizing the likelihood of errors or delays in voting." Morely, 67 Emory L.J. at 593.

As the Southern District of Georgia concluded in *Bethea v. Deal* in denying a 6-day extension request for five Georgia counties in the wake of Hurricane Matthew:

> For better or worse, Georgia's electoral machinery has been arranged to accept registrations until October 11, transition to in-person early voting by October 17, and conclude with in-person voting on Election Day. The requested extension throws a sizable wrench into that machinery. In short, Georgia's electoral system is simply not arranged to handle registration past the deadline and certainly ill equipped to handle it once early voting has commenced. Perhaps local BOE officials would ultimately be able to handle simultaneous registration and early voting. Like Plaintiffs, the Court places great faith in these local officials. What is clear to this Court, however, is that the potential for damage to Georgia's electoral machinery resulting from the requested deadline is severe and significant such that it outweighs the burden placed on individuals by not granting the injunction.

2016 U.S. Dist. LEXIS 144861, *8-9. The same applies here. Any burdens that Plaintiffs may face as a result of the circumstances presented by Hurricane Helene in meeting Georgia's voter registration deadline is vastly outweighed by the severe

and significant burden that would be placed on the State if their requested injunction were issued. As such, Plaintiffs cannot establish a likelihood of success on the merits, and their motion for preliminary injunction should be denied.

### B. The Balance of Equities Weighs Heavily against Injunctive Relief.

Courts in this district have considered the remaining two factors, balancing the equities and public interest, together in election cases. *See Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018). Both of these factors clearly weigh in favor of the State Defendants.

The State Defendants have a "strong interest in their ability to enforce state election law requirements." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011). For this reason, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (April 6, 2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U. S. 1 (2006)).

The Supreme Court and Eleventh Circuit have repeatedly stayed lower court injunctions that altered election rules once the 2020 general election cycle commenced. *See, e.g.*, *Andino v. Middleton*, No. 20A55, 592 U.S. __, 2020 WL 5887393, at *1 (Oct. 5, 2020) (Kavanaugh, J., concurring) ("By enjoining South Carolina's witness requirement shortly before the election, the District Court defied

[the *Purcell*] principle and this Court's precedents." (citations omitted)); *New Ga. Project v. Raffensperger*, No. 20-13360, 2020 U.S. App. LEXIS 31405, at *11-12 (11th Cir. Oct. 2, 2020) ("[W]e are not on the eve of the election—we are in the middle of it, with absentee ballots already printed and mailed. An injunction here would thus violate *Purcell*'s well-known caution against federal courts mandating new election rules—especially at the last minute.").

As the Southern District of Georgia recognized in *Bethea v. Deal,* the grant of such an injunction would be adverse to the public interest. Although the public has a general interest in having citizens participate in the electoral process, it also has an interest in preserving the integrity of that process. 2016 U.S. Dist. LEXIS 144861, *9-10. And, as the court concluded:

> Georgia's electoral machinery is simply not equipped to handle the situation that would result should this Court grant Plaintiffs' motion. At some point, Georgia's constitutionally valid voter registration deadline must be respected. Otherwise, Georgia's ability to conduct efficient and accurate elections at the local, state, and national level becomes irrevocably compromised. Determining the precise location of that line is certainly difficult. Wherever it is, however, it is clear to this Court that the requested extension falls on the wrong side of that line.

*Id.* The same is true here. The balance of equities weighs strongly against the requested extension, and Plaintiffs' Motion for Preliminary Injunction should be denied.

## II. Plaintiffs' Requested Relief Is Impermissibly Overbroad.

Finally, even if Plaintiffs could establish standing and meet the standards for the issuance of a preliminary injunction (which they have not), their requested relief is impermissibly overbroad. They seek a statewide injunction against enforcement of a valid state law, even under circumstances in which it could be constitutionally applied. Counsel for Plaintiffs essentially acknowledged at the hearing that many counties were not sufficiently affected by Hurricane Helene to warrant the imposition of a statewide, seven-day injunction.

When an election emergency actually causes a constitutional violation, a court still must tailor its relief to allow the state to enforce its election laws to the greatest extent practicable. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996)(judicial remedies for constitutional violations "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established"); *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). There is simply no basis for enjoining application of Georgia's voter registration laws in any area that did not in fact suffer sufficiently severe damage from Hurricane Helene to have

17

prevented prospective voters in those areas from registering to vote before the deadline. Plaintiffs' request for a seven day, statewide injunction is grossly overbroad, and Plaintiffs have failed to present a proposal for a more limited scope of relief that is both supported by facts and sufficiently straightforward to allow for proper administration. As such, their request for a preliminary injunction should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' request for a preliminary injunction in its entirety.

Respectfully submitted this 10th day of October, 2024.

|  |  |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| BRYAN K. WEBB<br>Deputy Attorney General | 743580 |
| */s/ Elizabeth T. Young*<br>ELIZABETH T. YOUNG<br>Senior Assistant Attorney General | 707725 |
| */s/ Alexandra M. Noonan*<br>ALEXANDRA NOONAN<br>Assistant Attorney General | 733236 |

Please address all
communications to:

Elizabeth T. Young
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
Telephone: (404) 458-3425
Email: eyoung@law.ga.gov

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Elizabeth T. Young*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 10th day of October, 2024.

Respectfully submitted,

*/s/ Elizabeth T. Young*
ELIZABETH T. YOUNG          707725
Senior Assistant Attorney General

*Counsel for Defendants Brian Kemp and Brad Raffensperger*